1                     UNITED STATES DISTRICT COURT
2                      DISTRICT OF PUERTO RICO

3   MIGDALIA VELEZ-VALENTIN,

4      Plaintiff,                             Civil No. 11-1830 (JAF)

5      v.

6   MICHAEL J. ASTRUE,
7   Commissioner of Social Security,
8
9      Defendant.

10

11                         **OPINION AND ORDER**

12      Claimant petitions this court under 42 U.S.C. § 405(g) to review the decision of

13   Defendant, the Commissioner of Social Security ("Commissioner"), denying Claimant's

14   application for disability benefits. (Docket No. 1.) Claimant files a memorandum

15   challenging the denial (Docket No. 16), and Commissioner files a memorandum defending

16   it (Docket No. 19).

17                            **I.**

18                         **Background**

19      We derive the following facts from the parties' filings and the transcript of the record

20   in this case ("R."). Claimant was born on December 2, 1967. (R. at 32.) Her earnings

21   records reflect at least some income for each year from 1987 to 2002. (R. at 23.) Claimant

22   worked as a secretary and then as a teacher. (R. at 23, 582.)

23      In 2002, while Claimant was working as a teacher, she developed a back problem for

24   which she sought treatment with the State Insurance Fund ("SIF"). Claimant's back

Civil No. 11-1830 (JAF)                                                                          -2-

1   condition was evaluated by several physicians, who provided varying diagnoses from 2002

2   to 2007.

3            In 2003, Claimant began psychiatric treatment with Dr. Rodrigo Freytes

4   ("Dr. Freytes"), whom she saw for several years.  Dr. Freytes diagnosed Claimant with

5   severe depression.  (R. at 29.)  State agency physicians also evaluated Claimant.  (R. at 30-

6   31.)  One of these physicians, Dr. Orlando Reboredo ("Dr. Reboredo"), diagnosed Claimant

7   with "mild to moderate depression and anxiety."  (R. at 603.)

8            On June 27, 2007, Claimant applied for Social Security disability benefits.[1]  (R. at

9   21.)  She claimed that she was disabled under the Social Security Act, 42 U.S.C. §§ 416 and

10   423 (the "Act"), since May 30, 2002, on account of back pain and depression.  (R. at 21.)

11   Commissioner denied her claim first on November 8, 2007, and again on reconsideration on

12   March 27, 2008.  (R. at 21.)  Claimant requested a hearing before an administrative law

13   judge ("ALJ"), which took place before ALJ Gilbert Rodríguez, on April 29, 2008. (R. at

14   21.)  On March 10, 2009, the ALJ issued an unfavorable decision.  (R. at 33.)  On

15   August 24, 2011, Claimant filed this case for judicial review of Commissioner's decision.

16   (Docket No. 1.)

17                                                **II.**

18                          **Standard for Review and Proceedings Below**

19            An individual is disabled under the Act if he is unable to do his prior work or,

20   "considering [his] age, education, and work experience, engage in any other kind of

21   substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d).  The

---

[1] Claimant also filed a prior application for disability benefits on May 19, 2003.  (R. at 21.)  Her claim was denied initially and then on reconsideration.  (R. at 21.)  Claimant requested review of the ALJ decision from the Appeals Council and, on March 28, 2007, the Appeals Council affirmed the denial. (R. at 21.)

Civil No. 11-1830 (JAF)                                                                              -3-

1    Act provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by

2    substantial evidence, shall be conclusive." § 405(g).  Substantial evidence exists "if a

3    reasonable mind, reviewing the evidence in the record as a whole, could accept it as

4    adequate to support [the] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs.,

5    955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of Health & Human Servs.,

6    647 F.2d 218, 222 (1st Cir. 1981)).  We must uphold Commissioner's decision if we

7    determine that substantial evidence supports the ALJ's findings, even if we would have

8    reached a different conclusion had we reviewed the evidence de novo. Lizotte v. Sec'y of

9    Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

10       Our review is limited to determining whether the ALJ employed the proper legal

11   standards and focused facts upon the proper quantum of evidence.  Manso-Pizarro v. Sec'y

12   of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1981).  We reverse the ALJ if we find

13   that he derived his decision "by ignoring evidence, misapplying the law, or judging matters

14   entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  In reviewing a

15   denial of benefits, the ALJ must have considered all evidence in the record.  20 C.F.R.

16   § 404.1520(a)(3).

17       The Act outlines a five-step inquiry to determine whether a claimant is disabled.

18   Step one focuses on the claimant's work activity; if claimant is "doing substantial gainful

19   activity," he will be found "not disabled." § 404.1520(a)(4).  Step two determines whether a

20   claimant's impairment(s) meet(s) the Act's severity and duration requirements.  Id.  A

21   claimant bears the burden of proof "at step one of showing that he is not working, [and] at

Civil No. 11-1830 (JAF)                                                                        -4-

1    step two that he has a medically severe impairment or combination of impairments . . . ."

2    Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

3         Step three asks whether the claimant has an impairment or combination of

4    impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part

5    404, subpart P. § 404.1520(d).  If the claimant does not have an impairment equaling one of

6    those listed impairments, see id., the inquiry proceeds to step four.  At step four, the ALJ

7    first must determine the claimant's residual functional capacity ("RFC").  § 404.1520(e).

8    Next, the ALJ asks whether the claimant has the RFC to perform the requirements of his

9    past relevant work. § 404.1520(f).  If the claimant is able to perform his past work, he is not

10   considered disabled.  Id.

11        In this case, the ALJ found at step one that Claimant had not been engaged in

12   substantial gainful activity between her alleged disability onset date of May 30, 2002 and

13   her last date insured of September 30, 2007.[2]   At step two, the ALJ found that Claimant had

14   two severe impairments: a mental condition and back problems.  (R. at 24.)  At step three,

15   the ALJ found that Claimant did not have an impairment equaling one of the impairments

16   listed in 20 C.F.R. Part 404, subpart P.  (R. at 24.)  Proceeding to step four, the ALJ then

17   found that through her last date insured, Claimant had an RFC that permitted her to perform

18   light work.  (R. at 27.)  The ALJ found that Claimant's non-exertional limitations did not

19   have a significant effect on her ability to perform light work.  (R. at 27-31.)  He found that

_____

[2] Based on the earnings posted in Claimant's record, she had to show that she was disabled on or
before September 30, 2007, when Claimant last met the Act's insured status requirement, as determined by
20 C.F.R. § 404.130–31. (R at 23.)

Civil No. 11-1830 (JAF)                                                                  -5-

1   Claimant's subjective complaints of depression, and Dr. Freytes' diagnosis of severe

2   depression, were not credible or supported by substantial evidence.  (R. at 27-31.)

3        At step five, the ALJ used the Medical-Vocational Rules ("the Grid") as a framework

4   to conclude that other work existed in significant numbers in the national economy that

5   Plaintiff could perform.  (R. at 27–28.)  The Grid is a table used at step five of the sequential

6   evaluation process that applies a claimant's vocational factors and her RFC to determine

7   whether she should be found disabled. Part 404 subpart P, App'x 2.  Rather than using the

8   Grid himself, the ALJ referred to a form signed by an employee of the Social Security

9   Administration.  (R. at 32, 439.)  The form stated that under Vocational Rule 202.21 of the

10  Grid, Claimant was capable of performing three jobs that existed in significant number: Call

11  out operator, election clerk, and surveillance system monitory.  (R. at 439.)  In his decision,

12  though, the ALJ cited Rule 204.00 rather than Rule 202.21.  (R. at 32.)

13       There was no indication that the employee who signed the form was a vocational

14  expert, and Commissioner does not defend the form as such.  (Docket No. 19 at 19-20.)

15  Rather, the Commissioner defends the tactic as a straight use of the Grid.  (Id.)  The

16  Commissioner concedes that the ALJ used the wrong Rule, and argues that the proper Rule

17  corresponding to Claimant would have been 202.16 or 202.20.  (Docket No. 19 at 20 n.2)

18  The Commissioner refers to this as "harmless error," and notes that under Rules 202.16 or

19  202.20, Claimant would have still been found not disabled.  (Id.)

Civil No. 11-1830 (JAF)                                                               -6-

1    Finding that there were other jobs in the national economy that Claimant could have

2    performed before her last insured date, the ALJ found Claimant not disabled before that

3    date.  (R. at 32-33.)

4                                                  **III.**

5                                              **Analysis**

6    Claimant challenges the ALJ's determination that she was not disabled before

7    September 27, 2007.  Claimant makes two main arguments.   (Docket No. 16.)  First,

8    Claimant argues that the ALJ was required to call a vocational expert to determine whether

9    she could perform these jobs identified by the ALJ.  In other words, Claimant argues that

10   her non-exertional limitations were so significant that only a vocational expert could have

11   determined what effect these would have on her occupational abilities.  The Commissioner

12   responds that Claimant's alleged limitations were not significant, allowing the ALJ to rely

13   on the Grid exclusively.  (Docket No. 19 at 19-21.)  Second, Claimant argues that the ALJ

14   improperly disregarded the opinion of her treating physician, Dr. Freytes, and failed to

15   provide "good reasons" for disregarding it.  We agree with Claimant's first argument that a

16   vocational expert was required.

17   We take our guidance from the First Circuit's leading case on this issue, Ortiz v.

18   Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989).  In Ortiz, the First

19   Circuit held that "[i]f a non-strength impairment, even though considered significant, has the

20   effect only of reducing that occupational base marginally, the Grid . . . can be relied on

21   exclusively. . . . " Id. at 524.  In this case, the ALJ found that Claimant's non-strength

22   impairments had only a minimal impact on reducing her occupational base.  (R. at 27-31.)

Civil No. 11-1830 (JAF)                                                              -7-

1   In arriving at that conclusion, the ALJ credited the testimony of state physicians over that of

2   Dr. Freytes.  Dr. Freytes had diagnosed Claimant with severe depression, whereas the state

3   physicians diagnosed only mild to moderate depression.

4          To determine whether the ALJ erred requires us to decide two related questions.  We

5   must decide "whether the ALJ acted properly in crediting some experts' testimony over

6   others', and if so whether the credited portions of the medical evidence were sufficient to

7   permit the ALJ to rely solely on the grid."  Roman-Roman v. Commissioner, 114 Fed.

8   Appx. 410, 101 Soc. Sec. Rep. Serv. 255, 2004 WL 2634489, at *1 (1st Cir. Nov. 19, 2004).

9          Based on the evidence before us, we think "it was within the ALJ's discretion to

10  credit the more positive reports of [Claimant's] mental condition; we cannot find his

11  conclusions in this regard unsupported by substantial evidence." Id. at *1 (citing Rodriguez

12  Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 2-3 (1st Cir. 1987)).  At least four

13  different state agency physicians evaluated Claimant and diagnosed her with only mild to

14  moderate depression.  (R. at 202, 249, 471, 600.)  Although Dr. Freytes diagnosed her with

15  major severe depression, the ALJ was not required to accept this view over the others.  See

16  Rodriguez-Pagan, 819 F.2d at 2 ("We must affirm the Secretary's resolution, even if the

17  record arguably could justify a different conclusion, so long as it is supported by substantial

18  evidence.") (citations omitted).  The ALJ gave "good reasons" for finding the state agency

19  physicians' opinions more persuasive than Dr. Freytes' opinion, consistent with 20 C.F.R.

20  § 404.1527(d)(2).  (R. at 29-31.)

21         Answering the second question—whether the ALJ could rely solely on the grid—is

22  "more difficult."  Roman-Roman, 2004 WL 2634489, at *2.  The Commissioner bears the

23  burden of showing that Claimant's condition does not prevent him from performing jobs in

Civil No. 11-1830 (JAF)                                                                              -8-

1    the national economy.  Id. (citing Vasquez v. Sec'y of Health & Human Servs., 683 F.2d 1,

2    2 (1st Cir. 1982)).   Under Ortiz, the Commissioner can rely on the grid "only if the

3    impairments do no more than marginally erode the range of work available to the applicant

4    in an established work category."  Id. (citing Ortiz, 890 F.2d at 524).

5            On these facts, we think that the use of a vocational expert was required.  Even the

6    relatively positive report by Dr. Reboredo—which the ALJ discussed more than any other

7    opinion—found that Claimant was "moderately limited" in seven of twenty areas.  (R. at 31,

8    601.)  Dr. Reboredo found that Claimant was moderately limited in the following areas:

9    ability to understand and remember detailed instructions; ability to carry out detailed

10   instructions; ability to maintain attention and concentration for extended periods; ability to

11   perform activities within a schedule, maintain regular attendance, and be punctual within

12   customary tolerances; ability to sustain an ordinary routine without special supervision;

13   ability to complete a normal workday and workweek without interruptions from

14   psychologically based symptoms and to perform at a consistent pace without an

15   unreasonable number and length of rest periods."  (R. at 601-02.)  In the concluding notes,

16   Dr. Reboredo noted that "Claimant is undoubtedly depressed, and is prone to manifest the

17   affectivity present."  (R. at 604.)  The ALJ repeated this finding.  (R. at 29.)

18           These are very similar to the facts in Roman-Roman.  In that case, the ALJ relied on

19   a psychiatric opinion that found claimant had moderate depression and moderate limitations

20   in "a number of relevant categories, including understanding, concentration and social

21   interaction."  Id. at *2.  The First Circuit held that "[i]n the absence of a better explanation

22   as to how these medical findings illustrate that a nearly full set of unskilled work is available

Civil No. 11-1830 (JAF)                                                                      -9-

1   to [Claimant], we believe that a translation from medical evaluations to job prospects was

2   more appropriately reserved for a vocational expert." Id.

3          The same logic applies here.  Even the positive account of Claimant's health—

4   provided by Dr. Reboredo and credited by the ALJ—still indicates that Claimant suffered

5   from moderate limitations in many areas that might impact her ability to work.  We think

6   that more of an explanation was required, from a vocational expert, as to why these

7   limitations would not significantly affect Claimant's ability to perform light work.   Here,

8   "we cannot find any clear basis for concluding that the impairments have no significant

9   effect on the work still available to [Claimant.]  This certainly does not show that [Claimant]

10  is disabled but, unless this gap is closed, it does preclude reliance upon the grid." Id.   The

11  fact that the ALJ, the Commissioner and the employee of the Social Security Agency

12  invoked five different Vocational Rules adds to our sense that a vocational expert was

13  required in this case.

14                                                        **IV.**

15                                                **Conclusion**

16         For the reasons stated above, we **REMAND** the Commissioner's decision for further

17  proceedings consistent with this opinion, including the use of a vocational expert.  We note

18  that this remand is within sentence four of 42 U.S.C. § 405(g), pursuant to Shalala v.

19  Schaeffer, 509 U.S. 292, 297 (1993).

20         **IT IS SO ORDERED.**

21         San Juan, Puerto Rico, this 28th day of January, 2013.

22                                        s/José Antonio Fusté
23                                        JOSE ANTONIO FUSTE
24                                        United States District Judge